UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
EDDIE COOK, STEPHEN PENN, and
DARREN WALLACE,

                 Plaintiffs,         **MEMORANDUM AND ORDER**
                                      07-CV-4467 (KAM)

    -against-

DETECTIVE MICHAEL L. HUCKABEY,
Shield No. 6745, and LIEUTENANT
ANDREW HEPWORTH,

                 Defendants.
--------------------------------X

MATSUMOTO, UNITED STATES DISTRICT JUDGE:

       Defendants Detective Michael L. Huckabey and

Lieutenant Andrew Hepworth (collectively, "defendants") move to

enforce a settlement agreement purportedly entered into with

plaintiff Stephen Penn ("Penn") in this action for damages

relating to alleged false arrests and malicious prosecutions.

There is no dispute that on November 5, 2008, in a telephone

conversation between Penn's counsel, Alan Levine, Esq.

("Levine"), and defendants' counsel, Caroline Chen, Esq.

("Chen"), Levine orally indicated to Chen that Penn accepted

defendants' settlement offer.  There is also no dispute that

Penn later "changed his mind" causing Levine to notify Chen that

Penn did not want to settle.  The question now before the court

is whether that oral agreement between the parties' counsel was

a valid, enforceable settlement agreement.  For the reasons set

forth more fully below, the court determines that it was not,

and therefore denies defendants' motion to enforce the oral agreement.

## I.    BACKGROUND

On or about October 25, 2007, Penn and plaintiff Eddie Cook ("Cook") filed a complaint against defendants alleging, *inter alia*, that in October 2007, defendants unlawfully searched a barbershop where plaintiffs were present and then unlawfully arrested plaintiffs in violation of plaintiffs' rights under the United States and New York State constitutions.  (See generally Docket Entry 1, Complaint.)  Plaintiff Darren Wallace ("Wallace") joined the action on or about May 22, 2008.  (See Docket Entry 56, Declaration of Caroline Chen in Support of Defendants' Motion to Enforce the Settlement Agreement ("Chen Decl.") at ¶ 7).  All plaintiffs in the action were represented by Levine, while all defendants were represented by Chen.  (See Chen Decl. at ¶¶ 1, 8.)

During the subsequent months the parties engaged in settlement negotiations through their respective counsel.  (See Chen Decl. at ¶¶ 4-11.)  On November 3, 2008, Chen faxed Levine a settlement offer for Penn in the amount of $3,501, plus attorneys fees and costs.  (See Docket Entry 51, Declaration of Alan D. Levine In Opposition to Defendants' Motion ("Levine Decl.") at Ex. B.)  Two days later, on November 5, 2008, Levine

and Chen spoke twice over the telephone.  During their first
conversation, Chen and Levine discussed settlement offers with
respect to plaintiff Cook, and Chen also informed Levine that
defendants offered $5,000 in settlement to Wallace.  (Chen Decl.
at ¶¶ 13, 14.)  Later that same day during a second phone call,
Levine informed Chen that: (i) Penn accepted defendants'
settlement offer of $3,501; (ii) Wallace accepted defendants'
settlement offer of $5,000, and (iii) Cook rejected defendants'
settlement offer of $25,000.  (See Chen Decl. ¶¶ 15-17; see also
Levine Decl. ¶ 4.)

        By letter dated November 10, 2008, Chen informed this
court that defendants "have reached a settlement agreement" with
Penn and Wallace and that the parties would submit a Stipulation
of Settlement and Dismissal to the court "upon execution by the
parties."  (Chen Decl. at Ex. B.)  Levine did not file any
contemporaneous objection to Chen's November 10th letter.

        On November 13, 2008, Chen served Levine with
"settlement paperwork for the respective settlements reached
between plaintiffs Wallace and Penn and defendants."  (See Chen
Decl. Ex. C ("November 13th paperwork").)  The November 13th
paperwork included a Stipulation and Order of Settlement and
Discontinuance for Levine's endorsement relating to both Wallace
and Penn's claims.  Id.  In addition, Chen enclosed various

documents "for plaintiff Wallace's endorsement" including (i) a Stipulation of Settlement and Dismissal, (ii) an Affidavit of No Liens, and (iii) a General Release. Id. The November 13th paperwork did not include any documents for Penn's endorsement. Rather, in the attached cover letter Chen informed Levine that defendants required a detailed summary of attorney's fees applicable to Penn before defendants could forward the paperwork necessary for Penn's settlement. Id.

Meanwhile, the parties continued with discovery and depositions. On December 11, 2008, Levine mailed Chen a summary of his attorney's fees for Penn. (Chen Decl. at Ex. D.) In his cover letter, Levine asked Chen to notify him promptly of any issues "so that we may have the final documents executed [sic] Mr. Penn and myself by the afternoon of Friday, December 12, 2008." Id. However, later that day, Penn informed Levine that he no longer wished to settle. (Levine Decl. at ¶ 3.) On December 12, 2008, before defendants had ever forwarded any settlement papers regarding Penn, Levine informed Chen over the telephone that Penn no longer wished to settle the action. (Chen Decl. ¶ 28; see also Levine Decl. ¶ 11.) Defendants then moved to enforce the oral agreement between counsel of November 5, 2008.

## II.  DISCUSSION

Defendants correctly point out that settlement agreements to end litigation are strongly favored by courts and may not be "lightly cast aside." Willgerodt v. Hohri, 953 F.Supp. 557, 560 (S.D.N.Y. 1997), aff'd, No. 97-7561, 1998 U.S. App. LEXIS 18805, at *2 (2d Cir. Jul. 21, 1988). A settlement agreement is a contract, and once entered into, the contract is binding and conclusive under general principles of contract law. See Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). Yet defendants' repeated assertion that plaintiff Penn cannot void a settlement agreement just because he "changed his mind," while generally true, is inconclusive. (See Docket Entry 54, Defendants' Memorandum of Law in Support of Their Motion to Enforce the Settlement Agreement ("Defs. Mem.") at 1, 4, 9; Docket Entry 57, Defendants' Reply Memorandum of Law in Support of Their Motion to Enforce the Settlement ("Defs. Reply Mem.") at 1, 9, 10.) In fact, the reason Penn decided not to settle is irrelevant here. As the court explained in Silas v. City of N.Y., the primary question here is not whether plaintiff can get out of a valid oral settlement agreement, but simply whether the oral settlement agreement was ever a valid and binding contract

in the first place.[1]  536 F. Supp. 2d 353, 361 (S.D.N.Y. 2008).

Applying New York and federal common law,[2] the court finds that

the parties here did not intend to be bound absent a writing,

and therefore holds that the oral agreement made over the

telephone between parties' counsel is not binding on the parties

to this action.  The agreement cannot be enforced, and the

motion is denied.

---

1 Although defendants devote a substantial portion of their
motion papers to a discussion of the actual and apparent
authority of Penn's counsel to enter into a settlement on Penn's
behalf, Penn does not contest this point.  (Compare Defs. Mem.
at 5-9; Defs. Reply Mem. at 2-3; with Docket Entry 50, Plaintiff
Penn's Memorandum of Law in Opposition to Defendants' Motion to
Compel Him to Enter Into a Settlement ("Pls. Mem.") at 2 ("In
point of fact, plaintiff's attorney most certainly did have
authority to enter into a settlement agreement."))  Accordingly,
the court declines to discuss this issue further.

2 It is an open question in the Second Circuit as to whether the
enforceability of a settlement agreement in a federal action
should be determined under state or federal law.  See Powell,
497 F.3d at 129 n.1 ("It is unclear whether the settlement of
federal claims is governed by New York or federal common law.").
However, the Second Circuit has repeatedly noted that the
question is essentially moot, as New York and federal law do not
differ substantively in this area.  See, e.g. id. (noting that
"New York law and federal common law were materially
indistinguishable" on this issue).  Here, the parties appear to
assume New York law applies and cite to both federal and New
York law.  (See Pls. Mem. at 2, 3, 4-5; Defs. Mem. at 9; Defs.
Reply Mem. at 4.)  The court will apply New York law and federal
common law interchangeably because they do not differ
substantively.  See Willgerodt, 953 F. Supp. at 560 n.1
(assuming without deciding that New York law applies to claim
based on federal statute where parties agreed that New York law
governed and "the federal rule regarding oral stipulations does
not differ significantly from the New York rule") (quoting
Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1283 n.3 (2d
Cir. 1996)).

## A.    *Requirement of a Writing*

It is well settled that under New York law, the parties' intentions govern the time of contract formation. Thus, parties are free to bind themselves orally, and the fact that they contemplate later formalizing their agreement in an executed document will not, standing alone, prevent enforcement of the oral agreement.  Powell, 497 F.3d at 129.  Accordingly, courts in this circuit have enforced settlement agreements even when such agreements have not been reduced to writing, but generally only where some other indicia of formality is present. See, e.g. id, at 129.  However, "[p]arties who do not intend to be bound until the agreement is reduced to a signed writing are not bound until that time."  Id.  Thus, in evaluating the enforceability of an oral settlement agreement, the dispositive issue is whether the parties intended to be bound by an oral agreement in the absence of a writing.  See Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985).

## B.    *Evaluating the Intent of the Parties*

Evaluating the intent of the parties to be bound by an oral agreement is a factual inquiry that requires an examination of the totality of the circumstances.  See Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 322 (2d Cir. 1997); see

also <u>R.G. Group, Inc. v. Horn & Hardart Co.</u>, 751 F.2d 69, 74 (2d Cir. 1984) (instructing that "[w]hat matters are the parties' expressed intentions, the words and deeds which constitute objective signs in a given set of circumstances").  The Second Circuit has identified four factors to guide this inquiry into whether the parties intended to be bound:

> (1) whether there has been express reservation of the right not to be bound in the absence of writing;
>
> (2) whether there has been partial performance of the contract;
>
> (3) whether all of the terms of the alleged contract have been agreed upon; and,
>
> (4) whether the agreement at issue is the type of contract that is usually committed to writing.

<u>Winston</u>, 777 F.2d at 80; <u>see also</u>, <u>Powell</u>, 497 F.3d at 129 (applying the <u>Winston</u> factors).  While no single factor is decisive, each provides significant guidance.  <u>Ciaramella,</u> 131 F.3d at 323.  The court therefore assesses the circumstances here in light of each of these four factors in turn.

### 1.  Express Reservation

There is no evidence in the record that, during the negotiations leading up to the November 5, 2008 oral agreement, either of the parties expressly reserved the right not to be bound absent a written agreement.  However, the conduct and communications of the parties are also relevant to this inquiry,

such that an implied reservation may suffice to weigh against enforcement under the first <u>Winston</u> factor. See <u>Ciaramella</u>, 131 F.3d at 324 ("We find numerous indications in the proposed settlement agreement that the parties did not intend to bind themselves until the settlement had been signed."); <u>see also</u> <u>Winston</u>, 777 F.2d at 81 ("Although neither party expressly reserved the right not to be bound prior to the execution of a document, language in the correspondence does reveal such an intent.").

Here, the conduct and communications of the parties is contradictory, however, overall the first <u>Winston</u> factor weighs slightly against enforcement. First, Chen's November 10, 2008 letter to the court stated without reservation that a settlement had been reached with Penn and Wallace and that "[t]here remains [only] one plaintiff in this action, Eddie Cook." (Chen Decl. at Ex.B.) This unequivocal admission to the court strongly indicates that defendants intended to be bound by the oral November 5th agreement. Furthermore, the record contains no response from Levine indicating that his clients disagreed with Chen's characterization of the settlement status.

Similarly, the opening of Chen's November 13, 2008 letter to Levine enclosing the November 13th paperwork also supports this view, as it refers to the "respective settlements

reached between plaintiffs Wallace and Penn and defendants,"
thereby  suggesting a view that a binding settlement agreement
already existed.  (See Chen Decl. at Ex. C.)  However, the
letter then goes on to contradict this posture in several
respects.  First, the letter provided only partial settlement
paperwork for Penn, and the attached cover letter stated that
defendants needed a detailed summary of plaintiffs' attorney's
fees related to Penn in order to forward the remainder of the
settlement paperwork.  Id.  This requirement indicates that the
parties did not intend to be bound absent execution of the final
"settlement paperwork."  See id.

     Further, although the November 13 letter did not
enclose the final settlement paperwork related to Penn, the
correspondence did enclose several documents "for Wallace's
endorsement."  Id.  Specifically, the correspondence included
(i) a Stipulation of Settlement and Dismissal, (ii) an Affidavit
of No Liens, and (iii) a General Release ("Wallace documents");
all of which required Wallace's signature.  Id.  On their face,
these documents do not pertain to Penn as they are directed
towards Wallace alone.  However, the language in these documents
is probative of defendants' intentions with respect to the Penn
oral settlement agreement because the two oral agreements arose
under nearly identical circumstances and were agreed to by

counsel during the same November 5th telephone conversation. Moreover, the Wallace documents were sent to Levine in correspondence referring to presumably comparable paperwork necessary for the Penn settlement. Thus, the several provisions in the draft Wallace documents indicating defendants' intention not to be bound to the Wallace oral agreement absent the execution of the documents strongly suggest a corresponding intention not to be bound to the Penn oral settlement agreement.

First, the Wallace Stipulation of Settlement and Dismissal recites in the "Whereas" clauses that defendants have made a settlement offer to Wallace and that Wallace has accepted the offer, and then goes on to state "now, therefore, it is hereby stipulated and agreed." Id. This language indicates that the oral agreement is not binding until the execution of that written agreement. Second, paragraph three of the draft agreement states "Plaintiff Wallace shall execute and deliver . . . all documents necessary to effect this settlement, including, without limitation, a General Release . . . and an Affidavit of No Liens." Id. Likewise, this language indicates that notwithstanding the oral agreement, execution and delivery of the Wallace documents was necessary to "effect this settlement." Finally, paragraph six of the document states that the agreement "contains all the terms and conditions agreed upon

11

by the parties hereto, and *no oral agreement* entered into at any time, nor any written agreement entered into prior to the execution of this Stipulation and Order . . . *shall be deemed to exist*, or to bind the parties hereto . . . ." Id. (emphasis added). The presence of a merger clause, such as paragraph six, "is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." See Ciaramella, 131 F.3d at 324. Because the Wallace oral settlement agreement was made under nearly the exact same circumstances as the Penn oral settlement agreement, the language in the Wallace documents reserving defendants' rights not to be bound by the Wallace oral agreement absent an executed and delivered writing is strong evidence that defendants correspondingly did not intend to be bound by the Penn oral agreement absent a writing.

Finally, Levine's December 11, 2008 letter to Chen enclosing his attorneys fees similarly reveals an intention not to be bound absent a writing. (Chen Decl. at Ex. D.) Levine requests that Chen notify him promptly of any questions "so that we may have final documents executed [sic] Mr. Penn and myself by the afternoon of Friday, December 12, 2008." Id. Levine's letter shows that prior to the exchange of even a first draft agreement, the amount of attorneys fees remained an open issue

12

for negotiation, without resolution of which the parties would not be bound.  In light of this letter, defendants' assertion that "[t]he record is devoid of any indication that plaintiff expressly reserved the right to be bound only by a writing" is incorrect.  (Defs. Reply Mem. at 5.)

Taken together, these acts and communications of the parties are contradictory.[3]  Chen's November 10th letter to the court and Penn's lack of a response to it, as well as the opening sentence of Chen's November 13, 2008 letter to Levine both indicate an objective intent by the parties to be bound absent a written agreement.  In contrast, each of the other aspects of communications between the parties indicate that the parties did not intend to be bound absent a written agreement.

---

[3] The record also reveals two alleged oral exchanges between Levine and Chen which again contradict each other and will not be considered by the court on this motion.  First, Chen alleges that following Cook's deposition, Levine informed her that the non-party witness fee would be required to insure Penn's appearance at his scheduled deposition.  (Chen Reply Decl. at ¶5.)  This comment signifies that Levine considered the parties bound by the oral agreement, even absent a writing.  Both Chen and Levine agree that Chen responded by stating that in order to receive the non-party deposition fee, the "settlement paperwork formalizing the settlement needed to be executed prior to the deposition date."  (Chen Reply Decl. at ¶6.)  In contrast, this comment by Chen reflects a view that the settlement agreement was not final and binding until the execution of the "settlement paperwork."  See id.  Yet because these purported comments effectively cancel one another out, and moreover, because this court assured the parties that proceeding with discovery as scheduled would not prejudice them with respect to the instant motion, the court declines to weight these exchanges in its analysis.

Thus, the remainder of Chen's November 13th letter, the language contained in the Wallace documents, and Levine's December 11th cover letter to his attorneys fees all evince an intent not to be bound absent a writing.  Therefore, despite some contradiction, the balance of these communications weighs slightly against enforcement of the settlement agreement with respect to the first <u>Winston</u> factor.

### 2.    Partial Performance

The second <u>Winston</u> factor, partial performance, also weighs against enforcement.  Here neither party has undertaken any performance, partial or whole.  Defendants have not delivered to Penn the agreed upon sum of money, let alone any money.  Moreover, Penn has not terminated his action against defendants.  Defendants' assertion that Levine partially performed by forwarding a list of attorney's fees is without merit.  (<u>See</u> Defs. Reply Mem. at 8.)  As discussed further below, the provision of the attorneys fees can more properly be characterized within the realm of negotiation rather than performance.  This second factor therefore weighs against enforcement.

### 3. Terms Remaining to be Negotiated

The Second Circuit has characterized the third <u>Winston</u> factor as requiring a determination of whether there was "literally nothing left to negotiate." <u>Winston</u>, 777 F.2d at 82 (internal quotation omitted). This requirement has not been met for several reasons.

First, it is clear that the amount of attorney's fees was a material term of defendants' agreement with Penn, as evidenced by the withholding of certain settlement paperwork for Penn absent that information. (Chen Decl. at Ex. C.) While Levine forwarded information as to attorney's fees on December 11, 2008, it is unclear whether defendants intended to agree to those amounts. <u>See id.</u>

Moreover, it is important to note that no draft settlement paperwork pertaining to Penn was ever exchanged by counsel. The Second Circuit has noted that "the actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior to execution . . . [and] [d]etails that are unnoticed or passed by in oral discussion will be pinned down when the understanding is reduced to writing." <u>Winston</u>, 777 F.2d at 82 (internal quotation omitted); <u>see also</u> <u>Ciaramella</u>, 131 F.3d at 325 (noting that "the existence of even 'minor' or 'technical'

points of disagreement in draft settlement documents [may be] sufficient to forestall the conclusion that a final agreement on all terms had been reached").

Here, the process of reducing the parties' oral understanding to writing had yet to commence. What is more, as the Wallace documents strongly suggest, this process likely would have revealed additional terms that required the parties' agreement. Again, because the Wallace oral settlement agreement arose under nearly identical facts and circumstances as the Penn oral settlement agreement, the Wallace documents are instructive of the type of written agreement defendants would likely seek with respect to Penn. As the Wallace documents show, the defendants sought to have Wallace execute an Affidavit of No Liens ("Affidavit") as a condition to "effect[ing] the settlement." (See Chen Decl. at Ex. C, draft settlement agreement at ¶ 3.) This Affidavit would have provided defendants an additional benefit which, according to the record, appears to have been outside the scope of the oral agreements between counsel on November 5, 2008. See Edwards v. City of N.Y., No. 08-cv-2199, 2009 U.S. Dist. LEXIS 75604, at *14 (S.D.N.Y. Aug. 25, 2009) (noting that execution of an Affidavit of No Liens affords a separate benefit "apart from the resolution of claims" by allowing the City to either "(1)

16

recover debts wholly unconnected to the instant case; or (2)

protect itself against claims to the settlement amount by

creditors wholly unconnected to the instant case").

Under the third <u>Winston</u> factor, the unresolved terms

related to attorney fees, the lack of any draft agreement, and

the strong possibility that the process of reducing the

agreement to writing would have revealed additional unresolved

terms such as a likely requirement that Penn sign an Affidavit

of No Liens, weigh against enforcement.

#### 4.    Type of Agreement Usually Reduced to Writing

The final <u>Winston</u> factor asks whether a settlement is

the type of agreement that is usually reduced to writing.  The

Second Circuit has previously answered that question in the

affirmative.  <u>See, e.g.</u> <u>Ciaramella</u>, 131 F.3d at 326

("Settlements of any claim are generally required to be in

writing or, at a minimum, made on the record in open court.");

<u>see also</u> <u>Winston</u>, 777 F.2d at 83 ("Where, as here, the parties

are adversaries and the purpose of the agreement is to forestall

litigation, prudence strongly suggests that their agreement be

written in order to make it readily enforceable, and to avoid

still further litigation.").  Moreover, under New York law

agreements pertaining to litigation are governed by statute, and

settlement agreements are only enforceable under one of three

circumstances: (i) where the agreement is memorialized in a signed writing; (ii) where the agreement is made orally between counsel in open court, or (iii) where the agreement is reduced to the form of an order and entered. See N.Y. C.P.L.R. § 2104. However, New York courts have recognized "substantial compliance" with these technical requirements as sufficient under New York law. See, e.g. Monaghan v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1283 (2d Cir. 1996).

None of the three circumstances of C.P.L.R. Section 2104 apply here. No signed agreement or court order exists, and the oral agreement between counsel did not occur in open court, nor under circumstances that substantially complied with the open court requirement.[4] Therefore, the requirements of C.P.L.R. Section 2104 are not met, and the oral settlement agreement is unenforceable under New York law.

The cases defendants rely on to suggest otherwise are inapposite. Defendants fail to cite a single Second Circuit decision in which an oral settlement agreement was upheld absent

_____

4 The term 'open court' as used in C.P.L.R. Section 2104 is a term of art referring "to the formalities attendant upon documenting the fact of the stipulation and its terms." Popovic v. New York City Health and Hosp. Corp., 180 A.D.2d 493, 493; 579 N.Y.S.2d 399, 400 (1st Dep't 1992). The requirement that the settlement be on the record and in open court serves as a limited exception to the Statute of Frauds. See Jacobs v. Jacobs, 229 A.D.2d 712, 715; 645 N.Y.S.2d 342, 344-45 (3d Dep't 1996).

a minimum of "substantial compliance" with the "open court" requirements of C.P.L.R. Section 2104.  See <u>Powell</u>, 497 F.3d at 131 (upholding a settlement agreement where "the terms of this agreement were announced on the record and assented to by the plaintiff in open court" and noting that the "in-court announcement here functioned in a manner akin to that of a memorializing writing"); <u>Monaghan</u>, 73 F.3d at 1282-83 (upholding settlement agreement based on "substantial compliance" with C.P.L.R. Section 2104 where discussion occurred before a judge despite the lack of contemporaneous record and where plaintiff reasonably relied on the oral agreement thereby estopping defendants from later challenging its validity).  Further, with the exception of a single Report & Recommendation, the district court decisions cited by defendants consistently adhere to this rule.  See <u>Foster v. City of New York</u>, No. 96-cv-9271, 2000 U.S. Dist. LEXIS 1251, at *11-12 (S.D.N.Y. Feb. 7, 2000) (upholding settlement where parties' counsel made an oral settlement agreement before judge during settlement conference); <u>Willgerodt</u>, 953 F. Supp. at 559-60 (upholding oral settlement agreement reached on the record in open court during a settlement conference where "a complete transcript of the proceeding documents the oral settlement agreement"); <u>cf.</u> <u>Walker v. City of New York</u>, No. 05-cv-0004, 2006 U.S. Dist. LEXIS

19

34345, at *19-20, *27 (E.D.N.Y. June 15, 2006) (Magistrate

Judge's Report & Recommendation to uphold oral settlement

agreement based on determination that parties intended to be

bound by oral agreement where plaintiff failed to produce any

evidence of an intent not to be bound, where court urged

"fundamental fairness" considerations as alternative basis for

enforcement, and where court was involved in numerous open-court

discussions about the agreement including a settlement

conference immediately preceding oral agreement between

parties).

     The wholly undocumented oral agreement between counsel

in this case not only fails to meet the technical requirements

of C.P.L.R. Section 2104, but it also fails to substantially

comply with its provisions.  Thus, regardless of the somewhat

straightforward nature of the contemplated settlement

highlighted by defendants (<u>See</u> Defs. Reply Mem. at 9),

enforcement of the oral agreement here is barred by C.P.L.R.

Section 2104, and the fourth <u>Winston</u> factor weighs against

enforcement.

## III. CONCLUSION

     Even aside from the statutory bar to enforcement under

New York law, each of the four <u>Winston</u> factors favors Penn.

Accordingly, the court finds that under New York and federal

common law the parties did not intend to be bound absent a writing, and therefore holds that the oral settlement agreement between counsel on November 5, 2008 is unenforceable.[5] Defendants' motion is denied.

Plaintiffs' counsel shall initiate a telephone status conference with the court on Wednesday, October 14, 2009, at 2 P.M.

SO ORDERED.

Dated:   Brooklyn, New York
         October 1, 2009

                                    /s/
                         _____
                         KIYO A. MATSUMOTO
                         United States District Judge
                         Eastern District of New York

_____

5 Accordingly, there is no need to address defendants' additional arguments regarding fraud, collusion, mistake, or accident. (See Defs. Reply Mem. at 10.)